John Justin SCHUCK, et al., and Western National Mutual Insurance Company, Intervening Plaintiff, Respondents,

v.

CHAMPS FOOD SYSTEMS, LTD., d/b/a Mother Tuckers Food Experience, Inc., Defendant and Third–Party Plaintiff, Appellant,

v.

METRO REFUSE, INC., MMP Architects, Korsunsky Krank Erickson Architects, Inc. and Hanuschak & Associates Ltd., Third–Party Defendants, Respondents.

No. CO–88–100.

Court of Appeals of Minnesota.

May 24, 1988.

Michael M. Bader, Kampmeyer & O'Connor, St. Paul, for John Justin Schuck, et al.

Dianne E. Walsh, Fitch, Johnson, Larson & Walsh, Minneapolis, for Western Nat. Mut. Ins. Co.

George G. Eck and Edmund Joseph Kelley, Dorsey & Whitney, Minneapolis, for Champs Food Systems, Ltd.

Victor A. Kreuziger, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Metro Refuse, Inc.

Robert L. Barrows, Michael G. Taylor and Marc D. Simpson, Leonard, Street & Deinard, Minneapolis, for MMP Architects.

David B. Sand, Briggs and Morgan, Minneapolis, for Korsunsky Krank Erickson Architects, Inc.

Winfred S. Herzog, Moss & Barnett, Minneapolis, for Hanuschak & Associates Ltd.

Considered and decided by WOZNIAK, C.J., and HUSPENI and NIERENGARTEN, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

Appellant Champs Food Systems, Ltd. appeals the dismissal of third-party claims and cross-claims against respondent MMP Architects for lack of personal jurisdiction. Appellant claims jurisdiction exists under Minnesota's long arm statute, Minn.Stat. § 543.19, subd. 1(d) (1984), and satisfies the requirements of the federal due process clause. We affirm.

## FACTS

In November 1985, plaintiff John Schuck was injured following the collapse of a block wall located in the trash enclosure area of the Mother Tucker's Restaurant in Roseville, Minnesota. Schuck subsequently instituted this action against appellant Champs Food Systems Ltd. (Champs), the owner of the restaurant.

Champs subsequently impleaded respondent MMP Architects (MMP) as well as other parties they believed were responsible for Schuck's injuries. These parties included the refuse company whose truck allegedly caused the wall to collapse, the local architectural firm that provided services in connection with the design and construction of the restaurant (Korsunsky Krank Erickson Architects, Inc., hereinafter KKE), and the engineering firm that rendered services in connection with the design and construction of the restaurant.

Champs is a Canadian corporation, and MMP is a Canadian architectural firm with its principal place of business in Winnipeg, Canada. MMP does not maintain a place of business in Minnesota, is not licensed to do business in Minnesota, has no employees in Minnesota, and does not solicit business in Minnesota. All dealings regarding the

negotiation and performance of its contract with Champs took place in Canada.

In approximately December 1983, the two firms contracted for MMP to provide a prototype plan for restaurants to be built by Champs under the name of "Mother Tucker's." In 1984, MMP provided Champs with a design for the Minnesota restaurant, and also added a design for the wall enclosing the trash area. The MMP designs were specifically listed as the plans for the Roseville, Minnesota restaurant.

The parties dispute the extent of MMP's involvement in Minnesota following the preparation of the initial designs. Champs hired KKE to provide local code review and additional architectural services, and also hired an engineering firm to provide structural review. Other than MMP's restaurant design, the contact between MMP and the state of Minnesota was limited to correspondence between MMP and KKE. The record indicates that MMP sent correspondence to KKE four times, that MMP architects spoke on the telephone with KKE representatives three times, and that MMP received correspondence from KKE on eight occasions.

MMP contended that the correspondence was sent to KKE at Champ's request, and that the additional telephone calls and correspondence all were initiated by KKE. MMP further asserted that it had no obligation to perform a structural review or supervise construction in Minnesota, other than delivering the prototype design to Champs in Canada.

Champs claimed that MMP's contacts resulted from continuing involvement through review of plans, designs, and changes. More specifically, they stressed that MMP issued a construction change order relating to the trash enclosure wall, and then reissued architectural drawings of the enclosure.

The trial court issued an order granting MMP's motion for a dismissal of the third-party complaint and cross-claims for lack of personal jurisdiction. This order is appealable as an order determining the action and preventing entry of an appealable judg-ment. *See Bulau v. Bulau*, 208 Minn. 529, 530, 294 N.W. 845, 847 (1940).

## ISSUE

Did the trial court err in finding no personal jurisdiction over respondent?

## ANALYSIS

Personal jurisdiction over nonresidents may be exercised where the provisions of a long arm statute are applied in a manner satisfying constitutional due process principles. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn.1977). Minn. Stat. § 543.19, subd. 1(d) provides a basis for personal jurisdiction if a foreign corporation or nonresident

(d) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) *the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice;* or

(3) the cause of action lies in defamation or privacy.

*Id.* (emphasis added).

The second exception listed in Minn.Stat. § 543.19, subd. 1(d) represents a codification of the "minimum contacts" test of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Viske v. Flaby*, 316 N.W.2d 276, 282 (Minn.1982). Due process mandates that a defendant have minimum contacts with a jurisdiction before being required to defend against a lawsuit in that jurisdiction. *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158.

To have minimum contacts, the defendant must have purposely availed itself on the privilege of conducting activities within the jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement assures jurisdiction will result from more than "random," "fortuitous," or

"attenuated" contacts, or from the "unilateral activity of another party or third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)). The nonresident must be able to reasonably anticipate being haled into the state's court. *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, (1980).

Analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties. *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965); *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn. 1983). We find MMP's minimal contacts with Minnesota are insufficient to confer jurisdiction under Minn.Stat. § 543.19 and the due process clause of the United States Constitution.

### Quantity of contacts

MMP's contacts with Minnesota include correspondence sent to KKE three times, correspondence received from KKE eight times, and three telephone conversations between MMP and KKE. Champs hired KKE to perform architectural services in Minnesota, and the record indicates that KKE initiated and facilitated virtually all the contacts with MMP.

Both MMP and Champs are Canadian residents. All negotiations between MMP and Champs and all restaurant design took place in Canada. MMP is not licensed to do business in Minnesota, does no business in Minnesota, and solicits no business in Minnesota. The primary contact with Minnesota is the restaurant prototype which MMP designed for the Roseville, Minnesota location. However, Champs chose the restaurant location, and MMP had no responsibility to perform any act in Minnesota.

When the quantity of contacts is minimal, their nature and quality become dispositive. *See Marquette National Bank v. Norris*, 270 N.W.2d 290, 295 (Minn.1978).

### Quality and nature of contacts

In reviewing the nature and quality of the contacts, we determine whether the nonresidents " 'purposefully availed' themselves of the benefits and protections of Minnesota law" or whether they were "brought into contact incidentally through the unilateral activity of the plaintiff." *Dent–Air*, 332 N.W.2d at 907. Champs asserts that MMP designed a restaurant specifically for Minnesota, with the direct effect of the negligent design resulting in injury to a Minnesota resident.

MMP, however, was not the typical aggressive party who initiated contact with Minnesota or purposefully availed itself on Minnesota. The only purposeful availment was Champ's unilateral decision to construct a restaurant in Minnesota. A contact with the forum state is insufficient if it resulted from the "unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. Although MMP was aware the prototype plan was to be used in Minnesota, all significant acts occurred in Canada, MMP took no part in the decision to open a restaurant in Minnesota, and MMP held no responsibility over the Minnesota construction. All other contacts were initiated by KKE. On appeal, the parties which contest the dismissal of the third-party claims and cross-claims are, in fact, both Canadian businesses.

In a case factually similar to the case before us, the United States District Court for the District of Minnesota determined that the exercise of jurisdiction over a third-party defendant violated the due process clause. *Independent School District No. 454 v. Marshall & Stevens Co.*, 337 F.Supp. 1278 (D.Minn.1971). In *Marshall & Stevens*, the plaintiff initiated an action in Minnesota against a company for damages resulting from an inadequate appraisal after the appraised property was destroyed. The defendant filed a third-party claim against a nonresident corporation claiming the computations it provided for the defendant's appraisal were incorrect.

The third-party defendant was not a Minnesota resident, but the defendant claimed the processing of the appraisal calculations constituted a Minnesota contact because the calculations concerned property located in Minnesota. However, the calculations were not processed in Minnesota, the negotiations between the defendant and third-party defendant took place outside of Minnesota, and there was no evidence the third-party defendant had direct dealings with the defendant's Minnesota office.

The court noted that the only related contact was the processing of the calculations necessary for the appraisal, and ruled that other unrelated contacts, which did not give rise to the cause of action, were insufficient. The contacts with Minnesota and the transaction at issue were found not to equate purposeful availment or an attempt to invoke the benefits and protections of Minnesota's laws. *Id.* at 1287.

*Marshall & Stevens* is analogous in that both MMP and the third-party defendant provided services to businesses which were defendants in actions and then sought indemnification by initiating third-party claims. Both third-party defendants completed the services for the defendants outside of Minnesota, and negotiated their contracts outside of Minnesota. Further, both third-party defendants were aware the services they provided were for properties located in Minnesota.

The cases in other jurisdictions cited by appellant which found jurisdiction over nonresident architects are distinguishable because, in addition to other contacts, the nonresident architects physically visited and examined the work in the forum state. *See Parker v. Williams & Madjanik, Inc.,* 270 S.C. 570, 243 S.E.2d 451 (1978); *Darden v. Heck's, Inc.,* 459 F.Supp. 727 (W.D. Va.1978). In addition, neither *Parker* nor *Darden* involved a third-party claim by one nonresident against another nonresident.

*Connection between the claim and the contacts*

The defendant's connection with the forum state must be such that they reasonably could anticipate being haled into court in the forum state. An important factor is whether the contacts involved in the case gave rise to the claim. *Dent–Air,* 332 N.W.2d at 908.

Champs contends that the primary contact, MMP's design of the Minnesota restaurant, gave rise to the litigation because the alleged negligent design caused an injury in Minnesota. MMP, however, asserts that the connection is insufficient because nothing in the transaction between MMP and Champs gave rise to the anticipation of defending an action in Minnesota since all obligations were performed in Canada. The third-party claim arises out of dealings between two Canadian businesses which took place almost exclusively in Canada. The connection between the claim and the contacts further is minimized by Champs' unilateral determination of the restaurant's location.

*Minnesota's interest in providing a forum*

Minnesota has an interest in providing a forum for residents who have been wronged, but this interest is not a contact and cannot establish personal jurisdiction. *Dent–Air,* 332 N.W.2d at 908. Although Minnesota is the location of an accident where a Minnesotan was injured, dismissal in this case will not deny the injured Minnesota plaintiff a forum. Champs, a Canadian corporation, is the party seeking reversal of the trial court's decision.

*Convenience of the parties*

In analyzing this factor, we are to balance the interests of the plaintiff in trying the case in a particular forum against the inconvenience to the nonresident defendant for having to defend in the plaintiff's forum. *Anderson v. Luitjens,* 311 Minn. 203, 210, 247 N.W.2d 913, 917 (1976). Unless the inconvenience to either party is extensive, this consideration also is not dispositive. *Aftanase,* 343 F.2d at 197.

Both MMP and Champs are Canadian residents. The contract negotiations between the parties and all restaurant design took place in Canada. Further, the third-party action may complicate the original action, and Champs is a sophisticated corporation capable of litigating claims in two

jurisdictions. Great care and reserve need be exercised when extending personal jurisdiction into the international field. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, ——, 107 S.Ct. 1026, 1035 (1987) (citing *United States v. First National City Bank*, 379 U.S. 378, 404, 94 L.Ed.2d 92 (1965)).

In conclusion, all of MMP's contacts with Minnesota were initiated either by Champs or KKE. MMP did not engage in any active solicitation or aggressive initiation of contacts with this state as in the typical scenario when personal jurisdiction is found. Because all significant events between MMP and Champs occurred in Canada and Minnesota contacts were minimal, MMP reasonably may not have expected to be haled into a Minnesota court. Further, both parties are residents of Canada, and the plaintiff does not contest the dismissal.

### DECISION

The trial court's dismissal of the third-party complaint against MMP for lack of personal jurisdiction is affirmed.

Affirmed.